UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BILLY RAY GREGSON,

          Plaintiff,                  CIVIL ACTION NO. 17-cv-13600

          v.                    DISTRICT JUDGE ROBERT H. CLELAND

COMMISSIONER OF            MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

          Defendant.
_____/

## REPORT AND RECOMMENDATION

    Plaintiff Billy Ray Gregson seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to social security benefits for his physical impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 16) and Defendant's Motion for Summary Judgment (docket no. 17).  The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket no. 3.)  The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

## I.    RECOMMENDATION

    For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 16) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 17) be **GRANTED**.

## II.    PROCEDURAL HISTORY

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on November 17, 2014, alleging that he has been disabled since May 1, 2012, due to an L5-S1 fusion, lumbar and cervical degenerative disc disease, hypertension, atrial fibrillation, and glaucoma.  (TR 28, 123-31, 144.)  The Social Security Administration denied Plaintiff's claims on February 23, 2015, and Plaintiff requested a *de novo* hearing before an Administrative Law Judge (ALJ).  (TR 60-68, 81-82.)  A few days before the hearing, Plaintiff amended his alleged onset date to March 26, 2013.  (TR 182.)  On May 9, 2016, Plaintiff appeared with a representative and testified at a hearing before ALJ Martha M. Gasparovich.  (TR 41-59.)   The ALJ subsequently issued an unfavorable decision on June 20, 2016, and the Appeals Council declined to review the ALJ's decision.  (TR 1-7, 28-37.)  Plaintiff then commenced this action for judicial review, and the parties filed cross motions for summary judgment, which are currently before the Court.

## III.   HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 16 at 5-12), Defendant (docket no. 17 at 7-14) and the ALJ (TR 32-35, 36) have set forth detailed, factual summaries of Plaintiff's medical record and the hearing testimony.  Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record.   Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also make references and citations to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of March 26, 2013, and that Plaintiff suffered from the following severe impairments: chronic lumbar sprain, degenerative disc disease, and status post lumbar laminectomy. (TR 30-31.) The ALJ also found that Plaintiff's gastroesophageal reflux disease, hypertension, and chronic obstructive pulmonary disease were non-severe impairments. (TR 31.) Additionally, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 31.) The ALJ then found that Plaintiff had the following residual functional capacity (RFC):

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following limitations: the claimant can stand and/or walk for no more than six hours of an eight-hour workday. He can lift no more than twenty pounds occasionally and ten pounds frequently. The claimant can only occasionally squat, crawl, kneel, climb, balance, bend, or stoop. He cannot reach above shoulder level bilaterally.

(TR 31-35.) Subsequently, in reliance on the vocational expert's (VE's) testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 36-37.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from March 26, 2013, through the date of the decision. (TR 28, 37.)

## V.    LAW AND ANALYSIS

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a

preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").  "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

**B.    Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)    Plaintiff was not presently engaged in substantial gainful employment; and

(2)    Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).

## C.     Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)."  *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing.  42 U.S.C. § 405(g).  Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and

a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed or remanded for further analysis under sentence four because "[t]he ALJ's RFC assessment is unsupported by substantial evidence, and also violates the treating physician rule." (Docket no. 16 at 14-19.)

### 1.   The ALJ's Assessment of Plaintiff's Treating Physician's Opinion

Plaintiff argues that the ALJ violated the treating physician rule by rejecting the opinion of his long-time treating physician, Craig Magnatta, DO, without good reason and in disregard of the fact that his opinion was consistent with the findings of other medical providers. (Docket no. 16 at 14-17, 19.) It is well settled that the opinions of treating physicians are generally accorded substantial deference. In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to assign that opinion in light of several factors: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

There is no *per se* rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Norris v. Comm'r of Soc. Sec.*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)). An ALJ's failure to discuss the requisite factors

6

may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)). The district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician's opinion and provide good reasons for that weight. *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

Dr. Magnatta completed a Lumbar Spine Medical Source Statement questionnaire regarding Plaintiff's physical condition on March 29, 2016. (TR 263-66.) In the questionnaire, Dr. Magnatta indicated that Plaintiff had been diagnosed with low back pain and radiculopathy

with a fair prognosis.  He also indicated that Plaintiff suffers from radiating pain and shows signs of sensory and reflex loss.  Dr. Magnatta opined that as a result of his impairments, Plaintiff could walk a half block without rest or severe pain; sit for thirty minutes at a time; stand for five minutes at a time; and sit, stand, and walk for about two hours total in an eight-hour work day.  He also opined that Plaintiff needed a job that permits shifting positions at will, needed to include ten-minute periods of walking around during the work day, and had to use a cane or other assistive device to stand or walk.  Dr. Magnatta further opined that Plaintiff could lift ten pounds occasionally and less than ten pounds frequently, could rarely twist or bend, and could never crouch/squat or climb ladders or stairs.  Dr. Magnatta concluded that Plaintiff was capable of low-stress work but that he was likely to be absent from work more than four days per month as a result of his impairments.

The ALJ assessed Dr. Magnatta's opinion as follows:

> Only some weight is given to Dr. Magnatta's opinions. . . . It is found that the somewhat extreme limitations suggested by Dr. Magnatta are not consistent with his treatment records, or with the record as a whole.  Although spinal tenderness was noted when musculoskeletal exams were given, Dr. Magnatta's treatment records consistently noted normal gait and station.  The treatment notes do not mention the need for a cane.  Dr. Magnatta's conservative treatment, which was limited to medication and home exercises, does not support the limitations given. It appears that if the claimant's symptoms were severe enough to support the recommended limitations,  Dr. Magnatta would have referred him to an orthopedist prior to April 2016, or recommended that he try physical therapy or injections, or consult with a neurologist or pain management specialist.

(TR 34-35.)

Plaintiff argues that the ALJ's reasons for discounting Dr. Magnatta's opinion are weak and are "certainly not the sort of 'good reasons' required to permit the significant discounting of the opinions of a treating physician," particularly where the physician's opinions are not contradicted by any other medical source.  (Docket no. 16 at 17.)  In support of this argument,

Plaintiff asserts that Dr. Magnatta's opinions were based on MRI and x-ray evidence and other objective findings of positive straight-leg raises, sensory loss, and reflex loss. Plaintiff argues that, against this objective evidence on which Dr. Magnatta's opinions are based, the ALJ "cited consistent findings of 'normal gait and station' . . . , but failed to explain the disproportionate weight she seemed to place on those findings." (*Id.* at 16.) Plaintiff's argument in this regard is somewhat vague. Seemingly, Plaintiff argues that the ALJ failed to explain why she placed more weight on Dr. Magnatta's findings of normal gait and station in his treatment records than the results of the objective medical evidence. This argument fails, however, as the ALJ simply pointed to Dr. Magnatta's findings of normal gait and station as an example of how Dr. Magnatta's opinion was inconsistent with his treatment notes. There is no indication, explicit or implicit, that the ALJ placed more weight on Dr. Magnatta's findings of normal gait and station than the results of the objective testing.

Plaintiff also finds fault with the ALJ's reasoning that there was no mention of the need for a cane in Dr. Magnatta's records. (Docket no. 16 at 16.) In this regard, Plaintiff argues that the consultative orthopedist, Michael Donahue, DO, confirmed Plaintiff's need for a cane in his treatment records when he stated that Plaintiff "ambulate[d] with the assistance of a cane with somewhat steppage gait with weakness of the anterior tib on the left." (*Id.* at 16 (quoting TR 268).) Dr. Donahue's statement, however, is an observation that he made in conducting a physical exam of Plaintiff; it is not a prescription for a cane or an opinion regarding Plaintiff's need for cane. The ALJ discounted Dr. Magnatta's opinion because his opinion that Plaintiff needed a cane to ambulate was inconsistent with the fact that Dr. Magnatta never mentioned Plaintiff's need for a cane in his treatment records. This inconsistency is a valid reason for discounting Dr. Magnatta's opinion.

Next, Plaintiff argues that when the ALJ discounted Dr. Magnatta's opinion by reasoning that  Dr. Magnatta administered only conservative treatment to Plaintiff, the ALJ ignored the fact that Plaintiff had already had a spinal fusion.  (Docket no. 16 at 16-17.)  In fact, the ALJ acknowledged Plaintiff's back surgery throughout her decision, and she incorporated it into her decision by determining that one of Plaintiff's severe impairments is "status post lumbar laminectomy."  (*See* TR 30-31, 33, 35.)  Additionally, Plaintiff testified that he believed that he had that surgery in 2003.  (TR 49.)  The fact that Plaintiff had back surgery in 2003 does not detract from the fact that Dr. Magnatta treated Plaintiff's back impairment conservatively during the alleged disability period, nearly a decade later.  The ALJ's reasoning that Dr. Magnatta's opinion is inconsistent with his treatment records because he provided only conservative treatment is sound.

Plaintiff further argues that "the ALJ pointed out the lack of a referral to an orthopedic surgeon prior to Dr. Donahue in 2016 . . . , but did not explain why the ultimate referral did not carry some weight.  (Docket no. 16 at 17.)  Again, Plaintiff misses the mark.  The ALJ pointed out the fact that Dr. Magnatta did not refer Plaintiff to an orthopedist until April 2016, over three years into the alleged disability period, to support his decision to discount Dr. Magnatta's opinion of extreme functional limitations as inconsistent with the record evidence.  The ALJ never indicated that Dr. Magnatta's referral of Plaintiff to Dr. Donahue carried no weight.

Plaintiff finally argues in this regard that Dr. Magnatta's opinion is consistent with Dr. Donahue's opinion that Plaintiff was a likely candidate for another back surgery and Plaintiff's prior treatment with James Giuliani, DO, who diagnosed Plaintiff with degenerative joint disease, sacroiliitis, and inflammation.  (Docket no. 16 at 17 (citing TR 194, 200, 205, 269).)  Essentially, Plaintiff points to evidence in the record that could support a determination contrary to the ALJ's

and invites the court to reweigh the evidence and substitute its own judgment for that of the ALJ; but it is not the court's role to resolve conflicts in the evidence. *See Brainard*, 889 F.2d at 681 (citation omitted). The evidence cited by Plaintiff, which the ALJ considered, does tend to support Plaintiff's assertions, but nothing in Plaintiff's argument gives the undersigned a basis for recommending that the ALJ's well-reasoned opinion be rejected. At most, Plaintiff has shown that the ALJ's decision falls within the ALJ's zone of choice. There is substantial evidence supporting the ALJ's decision, and, if the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if substantial evidence also supports the opposite conclusion. *See Her*, 203 F.3d at 389-90; *Mullen*, 800 F.2d at 545 (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

The ALJ's reasons for discounting Dr. Magnatta's opinion are sufficiently specific to make clear to any subsequent reviewers the weight that the ALJ gave to Dr. Magnatta's opinion, and they therefore constitute good reasons under the regulations. The ALJ has sufficiently complied with the procedural aspect of the treating physician rule. Accordingly, Plaintiff's Motion should be denied with regard to the ALJ's assessment of Dr. Magnatta's opinion.

### 2. The ALJ's Assessment of Plaintiff's RFC

Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ created her own RFC that is consistent with the opinion of the non-physician single decisionmaker but not with the findings of her treating physicians. (Docket no. 16 at 14, 18.) Plaintiff argues that the ALJ did not consult a medical expert or order a consultative examination in deciding this case. (*Id.* at 18.) As a result, Plaintiff argues, "the opinions and findings of [P]laintiff's treating physicians were unrebutted, and the ALJ could not therefore have

simply rejected them." (*Id.*)  Plaintiff correctly asserts that "[w]hile an ALJ must render his own RFC conclusions, they must still be based upon the medical record." (*Id.*)  But here, Plaintiff argues, the ALJ overstepped the bounds of her authority by assessing an RFC that is completely at odds with the opinion of Plaintiff's treating physician, which opinion was supported by the other evidence in the record.  (*Id.* at 19.)

The RFC assessment is the Commissioner's ultimate finding about the claimant's ability to perform work-related activities.  Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *5 (July 2, 1996).  It is defined as the most, not the least, the claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a).  The ALJ derives the RFC after considering the medical and other relevant evidence in the record.  *Id.*  "An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010).

The ALJ may adopt an opinion of a medical or non-medical source in whole or in part if he finds that it is supported by and not inconsistent with the other substantial evidence of record. But "[a]n ALJ has no obligation to conform his RFC finding to a physician's RFC assessment; as the Sixth Circuit has repeatedly noted, such a requirement 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.'" *Wagner v. Comm'r of Soc. Sec.*, No. 15-11553, 2016 WL 1729553, at *12 (E.D. Mich. Mar. 22, 2016), *report and recommendation adopted,* No. 15-11553, 2016 WL 1721049 (E.D. Mich. Apr. 29, 2016) (quoting *Rudd v. Comm'r of Soc. Sec.,* 531 F. App'x 719, 728 (6th Cir. 2013) (quoting SSR 96–5p, 1996 WL 374183 (July 2, 1996))).  Moreover, the Sixth Circuit recently rejected an argument substantially similar to that

advanced by Plaintiff – that once an ALJ decides to give no weight to the treating physicians'
opinions regarding a claimant's ability to work, the ALJ is required to get the opinion of another
physician before setting the RFC:

> We have previously rejected the argument that a residual functional capacity
> determination cannot be supported by substantial evidence unless a physician offers
> an opinion consistent with that of the ALJ. *See Shepard v. Comm'r of Soc. Sec.*,
> 705 Fed.Appx. 435, 442–43 (6th Cir. 2017) (rejecting the argument that "the ALJ's
> [residual functional capacity] lacks substantial evidence because no physician
> opined that [the claimant] was capable of light work"); *Rudd v. Comm'r of Soc.
> Sec.*, 531 Fed.Appx. 719, 728 (6th Cir. 2013) (rejecting the same argument because
> "the ALJ is charged with the responsibility of determining the [residual functional
> capacity] based on her evaluation of the medical and non-medical evidence").

*Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401–02 (6th Cir. 2018).  Essentially,
at all times, the ultimate responsibility for fashioning the RFC rests with the ALJ, who has an
obligation to determine the RFC based on the evidence that he finds to be well supported and
consistent with the record as a whole.  Plaintiff's argument therefore fails in this regard.

Here, the ALJ did not completely reject the opinion of Plaintiff's treating physician, Dr.
Magnatta, in assessing Plaintiff's RFC; she relied on it in part by assigning it some weight and, as
discussed above, properly discounted it in part as inconsistent with the treatment records and with
the record as a whole.  (TR 34-35.)  The ALJ also considered, discussed, and relied upon the
objective imaging evidence and Plaintiff's treatment records from Drs. Giuliani, Magnatta, and
Donahue in assessing Plaintiff's RFC.  (TR 32-35.)  The ALJ then summarized the record evidence
and her RFC assessment as follows:

> In sum, the record does not provide evidence of any impairment or combination of
> impairments that render the claimant unable to work.  Images of the claimant's
> spine do not reflect any herniations or other major abnormalities.   His
> musculoskeletal exams reflected some spinal tenderness, but it was consistently
> noted that his gait and station were normal (other than at his orthopedist visit in
> April 2016).  The claimant had a greater than one year gap in treatment between his
> July 2013 and September 2014 visits to Dr. Giuliani (Exhibit 1F).  This lack of
> treatment indicates that the claimant's symptoms were not as severe as alleged.  The

record does not note a loss of health insurance or provide any other explanation for the claimant's absence of treatment.  Additionally, the claimant's treatment has been mostly conservative.  It appears that sacroiliac injections were recommended by Dr. Giuliani, but there is no evidence that they ever taking [sic] place.  The claimant was told to do exercises at home, but there is no record of any physical therapy.  It does not appear that Dr. Magnatta referred the claimant to an orthopedist until April 2016, even though he had been treating the claimant consistently since February 2015.  The claimant told the orthopedist that he had been using his cane for a year, and he testified that he used the cane 95% of the time, on the recommendation of Dr. Magnatta.  However, although Dr. Magnatta noted the need for cane in his medical source statement, his treatment notes do not discuss the use of a cane, or contain a prescription for a cane.  For the reasons stated above, it is found that the claimant is able to work within the limitations of the residual functional capacity.

(TR 35.)

The discussion above demonstrates that the ALJ weighed the medical evidence and Plaintiff's subjective complaints and developed an RFC based on the evidence that she found to be well supported and consistent with the record as a whole, in accordance with the regulations. The ALJ's assessment of Plaintiff's RFC is supported by substantial evidence, and it should not be disturbed.

## VI.     CONCLUSION

For the reasons stated herein, the court should **DENY** Plaintiff's Motion for Summary Judgment (docket no. 16) and **GRANT** Defendant's Motion for Summary Judgment (docket no. 17).

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard*

*v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated:  January 2, 2019             s/ Mona K. Majzoub
                                    MONA K. MAJZOUB
                                    UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated:  January 2, 2019             s/ Leanne Hosking
                                    Case Manager